1   SHAWNA M. SWANSON (CSB No. 169555)
    SAUNDRA L. M. RILEY  (CSB No. 218084)
2   FENWICK & WEST LLP
    Embarcadero Center West
3   275 Battery Street
    San Francisco, CA  94111
4   Telephone: (415) 875-2300
    Facsimile:  (415) 281-1350
5
    Attorneys for Defendants
6   VYYO, INC.; SHIRA, INC.; DAVIDI GILO;
    ARIK LEVI; MICHAEL CORWIN; ILLAN
7   JUDKIEWICZ; AND ROBERT GRAIFMAN

8                       UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11  BROOKE BOARDER,                        Case No. C-04-0299 RSS

12              Plaintiff,                 **NOTICE OF MOTIONS AND MOTIONS
                                           TO DISMISS FOR IMPROPER VENUE
13       v.                                (F.R.C.P. 12(b)(3) & 28 U.S.C. § 1406) OR
                                           IN THE ALTERNATIVE TO TRANSFER
14  VYYO, INC., a Delaware corporation, in (28 U.S.C. §§ 1404(a) & 1406(a)); TO
    its own right based on its own conduct, DISMISS FOR FAILURE TO STATE A
15  and as parent of, and as successor-in- CLAIM (F.R.C.P. 12(b)(6)) AND FAILURE
    interest to, Shira, Inc., a Delaware    TO PLEAD WITH PARTICULARITY
16  corporation; SHIRA, INC., a Delaware   (F.R.C.P. 9(b)); AND TO STRIKE (F.R.C.P.
    corporation, also known as Shira       12); AND MEMORANDUM OF POINTS
17  computers, Inc.; DAVIDI GILO, an       AND AUTHORITIES IN SUPPORT
    individual; ARIK LEVI, an individual;  THEREOF**
18  MICHAEL CORWIN, an individual;
    ILLAN JUDKUVISH, an individual;        Date:  April 7, 2004
19  ROBERT GRAIFMAN, an individual;        Time:  9:30 a.m.
    and DOES One Through Fifty, inclusive, Ctrm:  4, Fifth Floor
20                                         Judge:  Magistrate Judge Richard S. Seeborg
                Defendants.
21                                         Date of Filing:  January 9, 2004
                                           Trial Date:  No Date Set
22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' MOTIONS TO DISMISS                              No. C-04-0299 RSS

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3

NOTICE OF MOTION AND MOTIONS ..................................................................1

4

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................2

INTRODUCTION .....................................................................................................2

5

STATEMENT OF FACTS ........................................................................................3

6

SUMMARY OF ARGUMENT .................................................................................4

7

ARGUMENT.............................................................................................................5

8

I. THE INTERESTS OF JUSTICE AND 28 U.S.C. SECTION 1406(A) DICTATE THAT THE COURT DISMISS THIS ACTION FOR IMPROPER VENUE ...................................................................................5

9

10

A. At Least Two Defendants Do Not Reside in the Northern District of California, and Plaintiff Fails To Plead that All Other Districts Lack Venue ....................................................................................................5

11

B. The Events or Omissions that Purportedly Occurred in The Northern District of California Do Not Relate to the Complaint.................6

12

C. The "Interests of Justice" Dictate that the Court Dismiss this Action........8

13

D. Alternatively, the Court Should Transfer this Action to the Northern District of Illinois To Cure the Lack of Venue ...........................................9

14

II. ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION FOR THE CONVENIENCE OF THE PARTIES ..................................9

15

16

III. EACH OF BOARDER'S CAUSES OF ACTION AGAINST VYYO AND THE INDIVIDUAL DEFENDANTS FAILS TO STATE A CLAIM AND SHOULD BE DISMISSED ....................................................................................10

17

IV. SEVERAL OF THE REMAINING CAUSES OF ACTION FAIL TO STATE A CLAIM EVEN AS TO SHIRA ...........................................................13

18

19

A. The Court Should Dismiss the First Cause of Action for Failure To Plead Fraud with Particularity ..................................................................13

20

B. The First Amended Complaint Lacks Sufficient Facts To Support Boarder's Fourth Cause of Action (Breach of Implied Contract re Severance) ...............................................................................................14

21

22

1. Boarder Has Not Alleged the Existence of a Contract...................15

2. Boarder Fails To Plead Conduct Sufficient To Establish Shira's Obligation To Pay Boarder the Purported Severance Pay.....................................................................................................15

23

3. Boarder's Inability To Plead the Substance of the Purported Promise Dooms His Claim.............................................................16

24

25

4. Any Purported Implied Promise Lacks Consideration ..................16

26

C. Boarder's Own Stock Option Agreement Defeats His Fifth Cause of Action (Breach of Contract re Award and Exercise of Stock Options)....................................................................................................17

27

D. Boarder's Claims Based On California Statutes Fail Because the Statutes Do Not Apply to Him ................................................................18

28

# TABLE OF CONTENTS
### (continued)

Page

E.   Plaintiff's False Association and Endorsement Claims (Seventeenth Cause of Action) Fail Under the Lanham Act ...........................................19

F.   Boarder's Twenty-First Cause of Action (Intentional Infliction of Emotional Distress) Fails To State a Claim ................................................20

1.   As a Matter of Law, Failure To Remove Boarder's Name from Shira's Website Is Not Outrageous Conduct .......................21

2.   Boarder Fails To Plead That Defendants Targeted Him with Their Conduct ...............................................................................22

V.   THE COURT SHOULD STRIKE REFERENCES TO CALIFORNIA STATUTORY LAW FROM THE FIRST AMENDED COMPLAINT AS IMMATERIAL ..................................................................................................23

CONCLUSION..............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp.*,
   62 F.3d 1454 (D.C. Cir. 1995) ..............................................................................14

*Ankeny v. Lockheed Missiles & Space Co.*,
   88 Cal. App. 3d 531 (1979) ..................................................................................21

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ..................................................................................17

*Bureerong v. Uvawas*,
   922 F. Supp. 1450 (C.D. Cal. 1996) .....................................................................23

*Christensen v. Superior Court*,
   54 Cal. 3d 868 (1991) .....................................................................................21, 22

*Cochran v. Cochran*,
   65 Cal. App. 4th 488 (1998) .................................................................................21

*Condit v. Star Editorial, Inc.*,
   259 F. Supp. 2d 1046 (E.D. Cal. 2003) ............................................................19, 20

*Davidson v. City of Westminster*,
   32 Cal. 3d 197 (1982) ..........................................................................................21

*Desaigoudar v. Meyercord*,
   223 F.3d 1020 (9th Cir. 2000) ..............................................................................13

*Division of Labor Law Enforcement v. Transpacific Transportation Co.*,
   69 Cal. App. 3d 268 (1977) ..................................................................................15

*First Commercial Mortgage Co. v. Reece*,
   89 Cal. App. 4th 731 (2001) ............................................................................12, 15

*Friedman v. Friedman*,
   20 Cal. App. 4th 876 (1993) .................................................................................15

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ..................................................................................9

*Lamont v. Haig*,
   590 F.2d 1124 (D.C. Cir. 1978) ..............................................................................6

*LeDuc v. Kentucky Cent. Life Ins. Co.*,
   814 F. Supp. 820 (N.D. Cal. 1992) .......................................................................23

*Myers v. Bennet Law Offices*,
   238, F.3d 1068  (9th Cir. 2001) ..............................................................................6

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) .................................................................13

*Nichols v. G. D. Searle & Co.*,
   991 F.2d 1195 (4th Cir. 1993) ...............................................................8

*Norwest Mortgage, Inc. v. Superior Court*,
   72 Cal. App. 4th 214 (1999) ..............................................................18

*Offshore Rental Co., Inc. v. Continental Oil Co.*,
   22 Cal. 3d 157 (1978) ........................................................................14

*Owen Wagener & Co. v. U.S. Bank*,
   297 Ill. App. 3d 1045 (1998) ..............................................................15

*Patton v. Cox*,
   276 F.3d 493 (9th Cir. 2002) .............................................................14

*Pessina v. Midway Mfg. Co.*,
   948 F. Supp. 40 (N.D. Ill. 1996) .......................................................20

*PI, Inc. v. Quality Products, Inc.*,
   907 F. Supp. 752 (S.D.N.Y. 1995) ......................................................6

*Tapley v. Lockwood Green Engineers, Inc.*,
   502 F.2d 559 (8th Cir. 1974) .............................................................23

*Thomas v. Fuerst*,
   No. 1-03-0795, 2004 WL 74292 (January 16, 2004)............................21

*Transphase Sys. v. Southern Cal. Edison Co.*,
   839 F. Supp. 711 (C.D. Cal. 1993) ....................................................11

*United States ex rel. Lee v. SmithKline Beecham*,
   245 F.3d 1048 (9th Cir. 2001) ...........................................................13

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ......................................................13, 14

*Western Mining Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) .......................................................11, 17

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
   705 F.2d 1515 (9th Cir. 1983) .............................................................8

*Yurick v. Superior Court*,
   209 Cal. App. 3d 1116 (1989) ...........................................................21

*Zadrozny v. City Colleges of Chicago*,
   220 Ill. App. 3d 290 (1991) ...............................................................15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Ziegler Chemical & Mineral Co. v. Standard Oil of California,*
  32 F.R.D. 241 (N.D. Cal. 1962) ................................................................................................5

## STATUTES

28 U.S.C. § 1391 ...............................................................................................................1, 5

28 U.S.C. § 1404 ............................................................................................................1, 4, 9

28 U.S.C. § 1406 .........................................................................................................1, 5, 8, 9

## RULES

Federal Rule of Civil Procedure 9 .........................................................................................2, 4, 13

Federal Rule of Civil Procedure 12 ......................................................................................1, 2, 4, 18, 23

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION AND MOTIONS

TO PLAINTIFF BROOKE BOARDER AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 7, 2004, at 9:30 a.m., or as soon thereafter as the matter may be heard in the courtroom of Magistrate Judge Richard S. Seeborg located at 280 South 1st Street, San Jose, CA  95113, Defendants Vyyo, Inc.; Shira, Inc.; Davidi Gilo; Arik Levi; Michael Corwin; Ilan Judkiewicz; and Robert Graifman ("Defendants") will and hereby do move this Court for an order dismissing Plaintiff Brooke Boarder's First Amended Complaint pursuant to 28 U.S.C. §§ 1391(a) & (b) and 1406(a) and Federal Rule of Civil Procedure 12(b)(3) on the ground that the Northern District of California lacks venue over this action and the interests of justice dictate the action be dismissed.  In the alternative, Defendants will and hereby do move this Court for an order transferring this action to the Northern District of Illinois where venue is proper pursuant to 28 U.S.C. § 1406(a).  In the alternative, Defendants will and hereby do move this Court for an order transferring this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties.  In addition, Defendants Vyyo and the individual defendants request the Court dismiss the First Amended Complaint in its entirety and Defendant Shira requests the Court dismiss the First (Fraud), Fourth (Breach of Implied Contract re Severance), Fifth (Breach of Contract re Award and Exercise of Stock Options), Seventh (Failure to Pay Compensation at Time of Termination In Violation of Labor Code Secs. 201-203), Eighth (Unlawful Deductions From Compensation In Violation of California Law and Public Policy), Tenth (Violation of Labor Code Section 216), Eleventh (Negligence Per Se), Thirteenth (Violation of Business And Professions Code Sections 17200 et seq.), Fifteenth (Violation of California Labor Code Sections 1400 et seq.), Seventeenth (Violations of the Lanham Act), Nineteenth (Statutory Misappropriation of Name or Identity Under California Civil Code Section 3344), Twentieth (Violation of State Constitutional Right of Privacy, Calif. Constitution Article I, Section 1), Twenty-First (Intentional Infliction of Emotional Distress), Twenty-Second (Unfair Business Practice In Violation of Business And Professions Code Secs. 17200 et seq.), and Twenty-Third (False Advertising In Violation of Business And Professions Code Secs. 17500 et seq.) Causes of Action against Defendant Shira pursuant to Federal Rules of Civil Procedure 9(b)

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   and 12(b)(6) for failure to state a claim and failure to plead fraud with particularity.  Defendants

2   further request the Court strike the portions of the Complaint identified herein pursuant to Federal

3   Rule of Civil Procedure 12(f) as immaterial to this action.

4        This motion is based upon this Notice of Motion and Motion, the Memorandum of Points

5   and Authorities below, the Declaration of Robert Graifman filed herewith, the Request for

6   Judicial Notice filed herewith, the papers and records on file in this action, and such other

7   argument and materials as may be presented at the hearing on this motion.

8   ### MEMORANDUM OF POINTS AND AUTHORITIES

9   ### INTRODUCTION

10        Plaintiff Brooke Boarder ("Boarder"), an Illinois resident who worked in Illinois for a

11   Massachusetts-based employer incorporated in Delaware, improperly seeks to apply California

12   law in this California forum to secure rights to which he is not, and has never been, entitled.  At

13   issue in this case is the employment relationship between Boarder, who resides in Illinois, and his

14   undisputed employer, defendant Shira, Inc. ("Shira"), a Delaware corporation headquartered and

15   at all times operated out of Massachusetts.  Boarder has not alleged and cannot allege that his

16   work for Shira ever necessitated his presence in California.  Indeed, from Boarder's complaint,

17   there is no indication Boarder has ever stepped foot in the state of California.  The Court should

18   reject Boarder's reckless naming of California defendants without alleging facts to support their

19   connection to the purported conduct at issue in this lawsuit.

20        Specifically, given Boarder's blatant attempt to exploit an improper forum, the Court

21   should dismiss this action.  Alternatively, if the Court determines the interests of justice so

22   warrant, the Court should transfer this case to the Northern District of Illinois – the state where

23   Boarder resides, where he worked (from his home) for defendant Shira, Inc., and where a state

24   action is currently pending between these same parties regarding the same underlying conduct -

25   an action Boarder failed to inform the Court exists.  Additionally, whether or not the Court

26   transfers the case to an appropriate forum, the Court should narrow Boarder's kitchen-sink

27   complaint by dismissing those claims he has failed to adequately plead and striking the

28   immaterial allegations in the complaint.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

F ENWICK & W EST LLP
A TTORNEYS A T L AW
S AN F RANCISCO

**STATEMENT OF FACTS** [1]

In April 2000, Shira hired Boarder as the Director of Technical Sales for the Central United States Region.  First Amended Complaint ¶ 15.  Shira memorialized this employment relationship in a job offer letter.  *Id.*  In March 2002, Boarder was promoted to Director of Sales for the United States and Canada.  *Id.*  Shira subsequently revised the terms of Boarder's employment, entering into a new contract with Boarder that changed only his commission structure.  *Id.*  This subsequent employment contract governed the remainder of Boarder's employment with Shira.  *Id.*  On May 31, 2002, defendant Vyyo, Inc. ("Vyyo") acquired ownership of Shira.  *Id.* at ¶ 17.  Thereafter, Shira promoted Boarder to Vice President of Global Sales, and Boarder continued "to provide services to Shira" until August 14, 2003, when he was terminated as part of a shutdown of Shira's operations.  *Id.* at ¶¶ 15, 18.  Boarder has not alleged and cannot allege that he was ever an employee of Vyyo.

On December 10, 2003, Shira (and Shira only) filed a lawsuit in Illinois against Boarder for an accounting, breach of fiduciary duty, and fraud based on Boarder's misconduct during his employment with Shira.  Declaration of Robert Graifman  ¶ 6 & Ex. B.  One month later, Boarder filed this suit, asserting twenty-three causes of action allegedly arising from his employment relationship with Shira.  Boarder asserts these claims against Shira, Vyyo, Davidi Gilo, Arik Levi, Michael Corwin, Ilan Judkiewicz, and Robert Graifman (collectively, "Defendants"); however, the only alleged connection between the non-Shira defendants and this action appears to be Vyyo's acquisition of Shira in May 2002.  *See* First Amended Complaint ¶¶ 7-12, 18.  Boarder *has not informed the Court* that there is a related action pending in Illinois in violation of Northern District Civil Local Rule 3-13.

**SUMMARY OF ARGUMENT**

Defendants request the Court dismiss the current action, in its entirety, for improper venue pursuant to 28 U.S.C. §1406(a).  This forum lacks any connection to the employment relationship

---

[1]  These facts are cited in support of Defendants' motion to dismiss for failure to state a claim in addition to their motion concerning venue.  Accordingly, in this Statement of Facts, Defendants assume, as they must on a motion to dismiss for failure to state a claim, the truth of all well-pled factual allegations in the First Amended Complaint.  *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1980).  As explained below, extrinsic evidence may be considered as to Defendants' venue motions.

1   underlying the complaint.  Moreover, Boarder filed the instant lawsuit in California, knowing that

2   the same parties were already litigating an action in Illinois state court regarding the same

3   employment relationship.  This blatant error warrants dismissal of this action.  In the alternative,

4   if the Court finds the interests of justice so require, the action should be transferred to the

5   Northern District of Illinois.

6      Should the Court determine that venue is proper in California, the Court should

7   nonetheless transfer the action to the Northern District of Illinois under 28 U.S.C. § 1404 (a) for

8   the convenience of the parties and witnesses and to promote efficient litigation.  Boarder resides

9   in and, at all relevant times, worked from Illinois; Shira is a Delaware corporation operated out of

10  Massachusetts; and the California residents have no significant relation to this matter.  Witnesses

11  and other sources of proof likely exist in Illinois (and in areas east of Illinois, including

12  Massachusetts), and the parties could most efficiently coordinate the state and federal lawsuits if

13  they were both located in Illinois.

14     In addition, regardless of the Court's decision on venue, Defendants request the Court

15  remedy Boarder's vastly overbroad complaint pursuant to Federal Rules of Civil Procedure 9(b),

16  12(b)(6) and 12(f).  Despite Boarder's attempt to blur the distinction between Shira and the non-

17  Shira defendants, Shira was Boarder's undisputed employer and the only entity potentially

18  responsible for the alleged conduct; thus, the Court should dismiss all claims against the non-

19  Shira defendants.  Additionally, several of the claims fail even against Shira:  the fraud lacks

20  particularity; Boarder fails to plead the requisite elements for several breach of contract claims

21  and the Lanham Act claim; and he improperly attempts to apply California law to non-residents'

22  out-of-state conduct.  Finally, the requests for relief improperly based on California law should be

23  stricken.

24                                    **ARGUMENT**

25  I.      **THE INTERESTS OF JUSTICE AND 28 U.S.C. SECTION 1406(A) DICTATE**
26          **THAT THE COURT DISMISS THIS ACTION FOR IMPROPER VENUE.**

27     The Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(3),

28  which permits a court to dismiss an action for improper venue.  Venue is proper in "(1) a judicial

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   district where any defendant resides, if all defendants reside in the same State, (2) a judicial

2   district in which a substantial part of the events or omissions giving rise to the claim occurred, or

3   a substantial part of property that is the subject of the action is situated, or (3) a judicial district in

4   which any defendant may be found, if there is no district in which the action may otherwise be

5   brought." 28 U.S.C. § 1391(a) & (b). If a plaintiff files an action "laying venue in the wrong

6   division or district[,]" the court "shall dismiss, or if it be in the interest of justice, transfer such

7   case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

8   Boarder asserts diversity and subject matter jurisdiction in this action, thus implicating both

9   subsections (a) and (b) of 28 U.S.C. § 1391. However, none of these subsections supports

10  Boarder's choice of venue. Because the Northern District of California is not the proper venue

11  for claims regarding out-of-state conduct between nonresidents, dismissal of this entire action

12  under Rule 12(b)(3) is appropriate.

A.      **At Least Two Defendants Do Not Reside in the Northern District of California, and Plaintiff Fails To Plead that All Other Districts Lack Venue.**

15          As a preliminary matter, subsections (a)(1), (a)(3), (b)(1), and (b)(3) do not support venue

16  in the Northern District of California. First, Boarder admits that subsections (a)(1) and (b)(1) are

17  not satisfied. Specifically, Boarder alleges that Judkiewicz "is an individual who plaintiff is

18  informed and believes resides in Israel … ." First Amended Complaint ¶ 11. Moreover, contrary

19  to Boarder's allegation otherwise (First Amended Complaint ¶ 12), Graifman resides in New

20  Jersey. Graifman Decl. ¶ 2.[2] Therefore, not all the defendants reside in California as required for

21  venue to be proper under either subsections (a)(1) or (b)(1). Second, Boarder does not plead any

22  facts establishing that "there is no district in which the action may otherwise be brought;" venue,

23  thus may not rest on subsections (a)(3) or (b)(3). Presumably, Boarder rests venue on subsections

24  (a)(2) and/or (b)(2).

---

[2]  On a Rule 12(b)(3) motion, unlike a 12(b)(6) motion, the Court does not assume the truth of the allegations in the complaint and properly considers, at its discretion, extrinsic evidence presented by affidavits, declarations, and oral testimony. *Ziegler Chemical & Mineral Co. v. Standard Oil of California*, 32 F.R.D. 241, 243 (N.D. Cal. 1962).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**B.    The Events or Omissions that Purportedly Occurred in The Northern District of California Do Not Relate to the Complaint.**

2

3    Likewise, subsections (a)(2) and (b)(2), which lay venue in a "judicial district in which a

4   substantial part of the events or omissions giving rise to the claim occurred," fail to support venue

5   in the Northern District of California.  "The substantiality of the operative events is determined

6   by assessment of their ramifications for efficient conduct of the suit."  *Myers v. Bennet Law*

7   *Offices*, 238, F.3d 1068, 1076 (9th Cir. 2001) (*citing Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C.

8   Cir. 1978)).  The mere fact that a district has *some* relation to the action does not, without more,

9   establish venue in that particular district.  *See e.g.*, *PI, Inc. v. Quality Products, Inc.*, 907 F. Supp.

10   752, 758 (S.D.N.Y. 1995) (negotiations in New York of merger agreement that was drafted,

11   executed, performed, and allegedly breached in Florida insufficient to support venue in New

12   York).

13    Here, Boarder cannot establish the "substantiality" requirement because the conduct

14   underlying Boarder's claims transpired outside California.  Boarder's First through Sixteenth

15   Causes of Action revolve around plaintiff's employment with and termination from Shira.[3]

16   Boarder admits that Shira hired him; indeed, his purported employment contract, attached to the

17   complaint, was between Boarder and Shira.  First Amended Complaint ¶ 15 & Exhibit A.

18   Boarder acknowledges that at all relevant times, Shira employed him.  First Amended Complaint

19   ¶ 5.  Contrary to Boarder's unsupported allegation that Shira resides in California (First Amended

20   Complaint ¶ 6), Shira is and at all relevant times was a Delaware corporation headquartered and

21   operating out of Newton, Massachusetts.  Graifman Decl. ¶ 3.  Boarder's purported employment

22   agreement demonstrates that he resided in Illinois during his employment, and Boarder

23   acknowledged that he still resided in Illinois as of the filing of this Complaint.  First Amended

[3]   The First through Sixteenth Causes of Action are as follows:  First (Fraud), Second (Breach of Contract re:  Unpaid Salary), Third (Breach of Contract re:  Unpaid Commissions); Fourth (Breach of Contract re:  Severance Pay), Fifth (Breach of Contract re:  Award and Exercise of Stock Options), Sixth (Breach of Contract re:  Unreimbursed Expenses), Seventh (Failure to Pay Compensation at Time of Termination In Violation of Labor Code Secs. 201-203), Eighth (Unlawful Deductions From Compensation In Violation of California Law and Public Policy), Ninth (Conversion), Tenth (Violation of Labor Code Section 216), Eleventh (Negligence Per Se), Twelfth (Negligence), Thirteenth (Violation of Business And Professions Code Sections 17200 et seq.), Fourteenth (Breach of Contract re:  Provision of Reduced Rate for COBRA Health Insurance Coverage), Fifteenth (Violation of California Labor Code Sections 1400 et seq.), and Sixteenth (For Accounting).

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  Complaint ¶ 5 & Ex. A.  At no time did Shira request that Boarder move to California or that

2  Boarder travel to or work in California, and Boarder does not allege anything to the contrary.

3  Graifman Decl. ¶  4.  Because Boarder did not work or reside in California and because Shira

4  operated out of Massachusetts, all events and omissions relating to the employment claims as

5  alleged in the First through Sixteenth Causes of Action, including claims for breach of contract

6  and failure to pay wages, have no ties with California.

7  Boarder's Seventeenth through Twenty-Third Causes of Action relate to Shira's purported

8  continued use of Boarder's name on its website and in advertising.[4]  To the extent Shira acted as

9  Boarder alleges, such conduct occurred in Massachusetts and any purported effects would have

10  been felt in Illinois, where Boarder resides.  *See* First Amended Complaint ¶ 6.  Boarder alleges

11  no basis to justify venue over the Seventeenth through Twenty-Third Causes of Action in

12  California.

13  Moreover, Boarder cannot rest venue on any conduct or omissions of the remaining

14  defendants.  As discussed *infra* Part III, Boarder fails to state claims against Vyyo or the

15  individual defendants.[5]

16  Boarder's summary allegation that "a substantial part of the events or omissions giving

17  rise to plaintiff's claims occurred, or a substantial part of the property that is the subject of this

18  action is situated, at the offices of the corporate defendants in Palo Alto, California" cannot

19  establish venue in this case:  Boarder was a resident of Illinois during the entirety of his

20  employment and for the all relevant times thereafter; Shira acted, or omitted to act, from its

21  headquarters in Massachusetts; and the remaining defendants have no relevance to this action

22  (and, as discussed *infra* Part III, all causes against them should be dismissed).  Venue is, thus,

23  improper in the Northern District of California.

---

24  [4]  The Seventeenth through Twenty-Third Causes of Action are as follows:  Seventeenth
    (Violation of the Lanham Act), Eighteenth (Common Law Misappropriation of Name or

25  Identity), Nineteenth (Statutory Misappropriation of Name or Identity Under California Civil
    Code Section 3344), Twentieth (Violation of State Constitutional Right of Privacy, Calif.

26  Constitution Article I, Section 1), Twenty-First (Intentional Infliction of Emotional Distress),
    Twenty-Second (Unfair Business Practice In Violation of Business And Professions Code

27  Secs. 17200 et seq.), and Twenty-Third (False Advertising In Violation of Business And
    Professions Code Secs. 17500 et seq.).

28  [5]  For convenience of discussion, defendants Gilo, Levi, Corwin, Judkiewicz, and Graifman are
    sometimes referred to as the "individual defendants."

1

**C.**     **The "Interests of Justice" Dictate that the Court Dismiss this Action.**

2

Where, as here, venue is improper, Section 1406(a) directs the Court to dismiss the action

3

unless the interests of justice indicate otherwise. *See* 28 U.S.C. § 1406(a). Where plaintiff brings

4

an action in an obviously improper district, the interests of justice weigh in favor of dismissing

5

the action. *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523 (9th Cir.

6

1983) ("Justice would not have been served by transferring [the plaintiff's] claims back to a

7

jurisdiction that he purposefully sought to avoid"); *Nichols v. G. D. Searle & Co.*, 991 F.2d 1195,

8

1201 (4th Cir. 1993) ("the interest of justice is not served by allowing a plaintiff whose attorney

9

committed an obvious error in filing the plaintiff's action in the wrong court, and thereby imposed

10

substantial unnecessary costs on both the defendant and the judicial system, simply to transfer

11

his/her action to the proper court, with no cost to him/herself or his/her attorney").

12

Here, Boarder blatantly chose an improper forum to bring his complaint. Indeed, the

13

purported conduct and/or omissions have no significant connection to California. Of particular

14

note, when Boarder filed his complaint, he failed to disclose to the Court that another lawsuit is

15

currently pending in Illinois, where Boarder resides, based on the same underlying facts. Plaintiff

16

could have brought these causes of action as counter-claims in the Illinois action,[6] but instead

17

sought out a distant forum in California, then hid the existence of the Illinois action despite an

18

affirmative obligation to reveal such information to the Court. Such conduct not only violates

19

Northern District Civil Local Rule 3-13, but also heightens the impropriety of maintaining this

20

related lawsuit in a second, distant forum.

21

Because Boarder brought his action in a forum unrelated to the underlying purported

22

conduct and because the interests of justice do not support venue in this forum, Defendants

23

respectfully request the Court dismiss the action for improper venue pursuant to 28 U.S.C.

24

§ 1406(a).

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[6]   Boarder's attempt to plead a violation of the Lanham Act does not require this Court to retain this action in the federal courts. As discussed *supra* Part IV.E., Boarder has not, and cannot, state a Lanham Act claim against any defendant.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

D.     **Alternatively, the Court Should Transfer this Action to the Northern District of Illinois To Cure the Lack of Venue.**

Once the Court determines that venue is improper, the Court must dismiss or transfer the action to a district in which the action may have been brought.  28 U.S.C. § 1406(a).  Should the Court determine that the interests of justice warrant that the action not be dismissed, Defendants request the Court transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).  Boarder could have brought this action in the Northern District of Illinois, as the courts in that district would have had diversity jurisdiction and proper venue over the action. Boarder resides in the Northern District of Illinois, the current state action is pending in that district, and Shira is subject to personal service in Illinois due to its business contacts within the state and because it has already availed itself of the forum's benefits by filing a lawsuit there.  As discussed *infra* Part III, the remaining defendants should be dismissed from this action because Boarder fails to plead any claims against them.  Thus, if the Court decides not to dismiss the action, the Court should transfer the action to the Northern District of Illinois.

II.     **ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION FOR THE CONVENIENCE OF THE PARTIES.**

Even if the Court determines that venue is proper in California, the Court should transfer this action to Illinois pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of the parties and witnesses, in the interest of justice."  Courts have discretion to determine such motions to transfer "according to an individualized, case-by-case consideration of convenience and fairness."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Such determinations involve weighing multiple factors, potentially including the respective parties' contacts with the forum; the plaintiff's choice of forum; the contacts relating to the plaintiff's cause of action in the chosen forum; the differences in the costs of litigation in the two fora; the convenience of the witnesses; availability of compulsory process to compel attendance of non-party witnesses; the relative ease of access to sources of proof; and the administrative difficulties flowing from court congestion. *Id.* at 498-99.

In the instant case, for several reasons, the balance of convenience and fairness indicate that the Court should transfer the action to the Northern District of Illinois.  First, the parties are

already litigating a related case in Illinois state court.  Because Boarder chose to file in the Northern District of California, the parties are now embroiled in two actions — regarding the same employment relationship — over 2,000 miles apart.  Since both actions arise from the same employment relationship, they will likely involve the same sources of proof.  Moving the California action to Illinois will allow the parties to efficiently conduct discovery into those sources of proof, including deposing witnesses.  Transferring the action to Illinois will decrease litigation costs, enhance efficiency among multiple litigations, and generally be more convenient than a California action.

Moreover, irrespective of the pending Illinois action, transferring the action to Illinois will be more convenient for the parties and main witnesses:  Boarder lives in Illinois; Shira operates out of Massachusetts; and individual defendant Graifman lives in New Jersey.  It is unclear at this time what non-party witnesses may be called to testify; still, the underlying conduct occurred in Massachusetts and Illinois, and the witnesses are likely to be located throughout the country. Certainly, transferring to Illinois will not create any new issues regarding compulsory process that do not already exist in the California litigation.  While Boarder may have chosen the Northern District of California as his favored forum, Boarder is not a resident of California, the alleged omissions and conduct have no ties to California, and Defendants propose to transfer venue to Illinois, a venue intimately tied with the claims and Boarder's own residence.

On balance, the pending litigation in Illinois, Boarder's residence in the suggested transferee forum and the lack of contacts between California and the conduct underlying Boarder's complaint support transferring this action to Illinois if the Court declines to dismiss the action.

III.     **EACH OF BOARDER'S CAUSES OF ACTION AGAINST VYYO AND THE INDIVIDUAL DEFENDANTS FAILS TO STATE A CLAIM AND SHOULD BE DISMISSED.**

Regardless of whether the Court dismisses, transfers, or retains the current action in this district, the Court should dismiss Boarder's claims against the non-Shira defendants – *i.e.*, Vyyo and the individual defendants – for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Boarder purports to allege sixteen causes of action against Vyyo and the individual

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  defendants:  Fraud; Failure to Pay Compensation; Unlawful Deductions in Violation of California

2  Law and Public Policy; Conversion; Violation of Labor Code Section 216; Negligence Per Se;

3  Negligence; Violation of Business And Professions Code Sections 17200 et seq.; Violation of

4  California Labor Code Sections 1400 et seq.; Violations of the Lanham Act; Common Law

5  Misappropriation of Name or Identity; Statutory Misappropriation of Name or Identity Under

6  California Civil Code Section 3344; Violation of State Constitutional Right of Privacy, Calif.

7  Constitution Article I, Section 1; Intentional Infliction of Emotional Distress; Unfair Business

8  Practices In Violation of Business And Professions Code Secs. 17200 et seq.; and False

9  Advertising In Violation of Business And Professions Code Secs. 17500 et seq.

10      Boarder asserts an additional seven causes of action against Vyyo:  Breach of Contract re

11  Unpaid Salary; Breach of Contract re Unpaid Commission; Breach of Contract re Severance;

12  Breach of Contract re Award and Exercise of Stock Options; Breach of Contract re Unreimbursed

13  Expenses; Breach of Contract re Reduced Rate for COBRA Health Insurance Coverage; and For

14  Accounting.

15      On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

16  12(b)(6), a court generally accepts all well-pled factual allegations as true.  *Western Mining*

17  *Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  A court need not, however, "assume the truth

18  of legal conclusions merely because they are cast in the form of factual allegations."  *Id.*

19  (rejecting plaintiff's allegations that were merely legal conclusions); *see also Transphase Sys. v.*

20  *Southern Cal. Edison Co.*, 839 F. Supp. 711, 718 (C.D. Cal. 1993) ("the Court does not 'need to

21  accept as true conclusory allegations … or unreasonable inferences'") (citation omitted).

22      As discussed *supra*, this action revolves around Boarder's former employment with Shira,

23  his termination from employment, and Shira's purported conduct subsequent to that termination.

24  Surprisingly, Boarder claims that Vyyo and the individual defendants are responsible for Shira's

25  contractual obligations and conduct related to Boarder's employment and termination.

26  Apparently, Boarder assumes that Vyyo's acquisition of Shira magically transformed Vyyo into

27  his employer.  Boarder makes a further leap assuming that, since the individual defendants have

28

ties to Shira and/or Vyyo as directors or shareholders, they also must be responsible for Shira's acts or omissions.

Boarder's own allegations undermine any assumption that Vyyo committed the conduct giving rise to Boarder's claims. Boarder admits that Shira hired and subsequently entered into a contract with him. First Amended Complaint ¶ 15 & Ex. A. Boarder does not and cannot allege that he entered into an employment contract or employment relationship with Vyyo. Such a contract is an indispensable component of a breach of contract claim. *See First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). In fact, Boarder acknowledges that he provided services to *Shira* until Shira terminated his employment. First Amended Complaint ¶ 15.[7] As to the remaining non-contractual claims, Boarder expressly relies on Shira's conduct in failing to remove his name from the website and in purportedly referring to him while trying to collect on outstanding accounts after his termination. First Amended Complaint at ¶¶ 101-02. Boarder cannot levy his employment-related claims against a company that never employed him or a company that he fails to allege even committed the alleged acts or omissions.

The individual defendants' connections to the underlying conduct and this lawsuit are even more attenuated. Boarder alleges various shareholder and director relationships the individual defendants had with Shira and/or Vyyo, but such allegations fail to impose responsibility on the individual defendants for conduct related to Boarder's employment with Shira. First Amended Complaint ¶¶ 8-12. Simply put, Boarder fails to state any cognizable claim against the individual defendants.

In sum, Boarder improperly assumes, without any factual foundation, that Vyyo and the individual defendants are responsible for Shira's conduct, but Boarder's own admissions belie such responsibility. Thus, the Court should dismiss the First Amended Complaint, and each cause of action therein, as to Vyyo and the individual defendants.

---

[7] Moreover, even accepting, *arguendo*, the remarkable conclusion that Vyyo magically became Boarder's employer after the acquisition, Vyyo could not have failed to pay Boarder wages for September through November of 2001 because it did not acquire Shira until May *2002*.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

IV.    **SEVERAL OF THE REMAINING CAUSES OF ACTION FAIL TO STATE A CLAIM EVEN AS TO SHIRA.**

A.    **The Court Should Dismiss the First Cause of Action for Failure To Plead Fraud with Particularity.**

Boarder's First Cause of Action for Fraud lacks the particularity required by Federal Rule of Civil Procedure 9(b) and therefore should be dismissed.  To satisfy Rule 9(b), a plaintiff attempting to plead fraud must allege more than mere legal conclusions:  "the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations and citations omitted); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  This pleading standard requires a "high degree of meticulousness."  *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).  Plaintiffs must plead the "who, what, when, where, and how" of the purported fraud.  *Vess*, 317 F.3d at 1106 (quotation and citation omitted); *see also Neubronner*, 6 F.3d at 672 ("complaint must specify such facts as the times, dates, places, benefits, received, and other details of the alleged fraudulent activity").  Thus, a complaint merely alleging a fraud occurred, without providing particulars of when, where, or how the purported fraud occurred will fail on a motion to dismiss.  *See, e.g., Vess* 317 F.3d at 1106 (dismissing fraudulent conspiracy claim for lack of particularity); *United States ex rel. Lee v. SmithKline Beecham*, 245 F.3d 1048, 1051 (9th Cir. 2001) (broad allegations of changing control numbers to wrongfully represent results of laboratory tests failed particularity requirement where plaintiff failed to identify types of tests implicated by fraud, employees performing tests, or dates, times or places of tests); *Neubronner*, 6 F.3d at 672 (dismissing contemporaneous trading claim for failure to allege source or content of information or how defendant used information to his advantage).

Boarder vaguely alleges that "defendant Graifman, acting on his own behalf and on behalf of the corporate defendants, made numerous representations to Boarder attesting to the alleged completion status, quality, reliability, and marketability of the corporate defendants' software products."  First Amended Complaint ¶ 20.  Boarder, however, does not identify any particular statement, let alone set forth what Graifman purportedly misrepresented about the completion

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    status, quality, reliability or marketability of the software product or the circumstances

2    surrounding the purported misrepresentations.  Boarder also generally attributes "numerous

3    representations of the same type and kind that Graifman made" to the remaining "individual

4    defendants," claiming such statements were made between May 2002 and July 2003.  First

5    Amended Complaint ¶ 20.  This general, catchall allegation fails to attribute particular conduct to

6    particular defendants or describe the circumstances surrounding the purported misrepresentations.

7    Further, it fails to show how the statement of the individual defendants could bind either Vyyo or

8    Shira.  Such nebulous pleading deprives Defendants of the specificity required "to give [them]

9    notice of the particular misconduct … so that they can defend against the charge and not just deny

10   that they have done anything wrong."  *See Vess*, 317 F.3d at 1106.  Because Boarder fails to meet

11   the particularity requirement to state a fraud claim against Shira (as well as Vyyo and the

12   individual defendants, who, as explained above, have additional grounds for dismissal), the Court

13   should dismiss Boarder's First Cause of Action for Fraud.

**B.      The First Amended Complaint Lacks Sufficient Facts To Support Boarder's Fourth Cause of Action (Breach of Implied Contract re Severance).**

16          Though Defendants' motion is under Rule 12, this Court, of course, will look to state law

17   to determine the substantive elements of a breach of contract claim.  Boarder attempts in this

18   lawsuit to involve parties in Illinois, New Jersey, Massachusetts, Israel and California.  However,

19   because he has filed his action in California, this court applies California's choice of law rules to

20   determine which state's laws should apply in the event of a conflict.  *Patton v. Cox*, 276 F.3d 493,

21   495 (9th Cir. 2002) (applying forum's choice of law provision in diversity action); *A.I. Trade*

22   *Finance, Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1464-1465 (D.C. Cir. 1995) (applying

23   forum's choice of law provision in a federal question case).  To evaluate such conflicts, California

24   courts apply the governmental interest approach by identifying the interest each state has in

25   applying its law to the claim, and where a conflict exists, applying the law of the state whose

26   interest would be most impaired if not applied.  *Offshore Rental Co., Inc. v. Continental Oil Co.*,

27   22 Cal. 3d 157, 161-66 (1978).  Here, while Defendants believe that Illinois law should apply to

28   the action given Boarder's Illinois residence, California and Illinois law do not conflict on this

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  issue; thus, Defendants refer to both states' laws for purposes of this motion.  Under either state's

2  laws, Boarder's severance claim fails.

3      *1.*     *Boarder Has Not Alleged the Existence of a Contract.*

4       Accepted as true, the allegations of the First Amended Complaint fail to support a claim

5  for breach of an implied-in-fact contract against any defendant, including Boarder's employer

6  Shira.  "[T]he vital elements of a cause of action based on contract are mutual assent (usually

7  accomplished through the medium of an offer and acceptance) and consideration. As to the basic

8  elements, there is no difference between an express and implied contract. … While an implied in

9  fact contract may be inferred from the conduct, situation or mutual relation of the parties, the very

10  heart of this kind of agreement is an intent to promise."  *Division of Labor Law Enforcement v.*

11  *Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 275 (1977); *see also Friedman v.*

12  *Friedman*, 20 Cal. App. 4th 876, 888 (1993); *Owen Wagener & Co. v. U.S. Bank*, 297 Ill. App. 3d

13  1045, 1052 (1998); *Zadrozny v. City Colleges of Chicago*, 220 Ill. App. 3d 290, 295 (1991).

14  Thus, to state a claim for breach of an implied-in-fact contract, a plaintiff must allege (1) the

15  existence of a contract between plaintiff and defendant; (2) that the plaintiff performed his

16  obligations or his performance was excused; (3) a breach by the defendant; and (4) damages

17  caused by the breach.  *First Commercial*, 89 Cal. App. 4th at 745; *Owen Wagener*, 297 Ill. App.

18  3d at 1052.  Here, Boarder's cause of action fails on the first element.

19

20      *2.*     *Boarder Fails To Plead Conduct Sufficient To Establish Shira's Obligation*
                  *To Pay Boarder the Purported Severance Pay.*

21       Boarder fails to allege sufficient conduct to establish Vyyo or Shira's intent to promise

22  Boarder a severance package.  *See Division of Labor Law Enforcement*, 69 Cal. App. 3d at 275;

23  *Friedman*, 20 Cal. App. 4th at 888; *Zadrozny*, 220 Ill. App. 3d at 295-96.  Boarder rests his claim

24  on the allegation that Shira and/or Vyyo created an implied-in-fact contract with him based on

25  five executives who purportedly received vastly varying severance packages upon their

26  departures from either Shira or Vyyo.  First Amended Complaint ¶ 32.  Out of the five examples,

27  however, Boarder only identifies the source of one severance payment, and that source was

28  Vyyo's Israeli branch – not his employer, Shira.  *Id.*  The remaining four examples do not

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   indicate who awarded or paid the alleged severance.  *Id.*  One instance does not create a policy,

2   pattern or practice. [8]  And, as discussed *supra*, Vyyo did not employ Boarder, so its conduct could

3   not create an implied-in-fact employment contract.

4

5           **3.      Boarder's Inability To Plead the Substance of the Purported Promise
                       Dooms His Claim.**

6           The absurdity of Boarder's severance claim is highlighted by his inability to set forth the

7   substance of the promise he claims arose from the alleged severance payments.  The offers he

8   cites vary in substance and in amount, from $64,400 with no stock options to "total severance

9   benefits worth approximately one million dollars."  First Amended Complaint ¶ 32.  Because of

10  the wide discrepancy in amount, even Boarder is unable to ascertain a specific promise, instead

11  asserting a nebulous entitlement "to a severance payment *reasonably consistent* with the amount

12  given to other executive officers" the terms of which he must still prove, but "in any event would

13  include *not less than* $125,000 in cash, plus options for 25,000 shares . . . ."  *Id.* at 33 (emphasis

14  added).  There is no indication of from where Boarder plucked these arbitrary figures.  Indeed,

15  Boarder's minimum calculation "is not reasonably consistent with" at least one of the examples

16  he cites – to the contrary, he demands almost twice the amount paid to the executive in that

17  instance *and* an option for 25,000 shares where the cited executive got none.  Boarder's (1) own

18  inability to define the exact terms of the policy and (2) minimum demand that departs from the

19  examples cited in his complaint demonstrate that Shira did not promise, through its conduct or

20  otherwise, to offer Boarder severance pay.  In essence, Boarder attempts to burden the Court with

21  the task of ascertaining a "reasonable" amount of severance for an employee who was never

22  promised severance.

23          **4.      Any Purported Implied Promise Lacks Consideration.**

24          Additionally, even if Shira had acted in such a way as to create an implied promise to

25  offer Boarder severance pay, Boarder fails to allege any consideration for this purported implied-

26  in-fact contract with any defendant.  Indeed, Boarder does not plead whether these severance

27

28  [8]  Boarder also fails to provide the timeframe for the purported severance offers.  *Id.*  Without
         this information, it is impossible to determine if the offers were isolated instances.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  offers occurred before, during, or after his employment with Shira, and fails to demonstrate his

2  knowledge of or reliance on the purported promise to pay severance.

3  Because the First Amended Complaint lacks sufficient allegations to show the existence

4  of an implied-in-fact contract, the Court should dismiss Boarder's Fourth Cause of Action for

5  Breach of Implied Contract re Severance.

6  **C.**   **Boarder's Own Stock Option Agreement Defeats His Fifth Cause of Action**
    **(Breach of Contract re Award and Exercise of Stock Options).**

7

8  Boarder claims Defendants failed to permit him to exercise his stock options, purporting

9  to rest this claim on his stock option "award." First Amended Complaint ¶ 35. Boarder's claim

10  rests on the fantastic assumption that when he was terminated, all of his unvested options

11  suddenly vested. This assumption is, of course, wholly unfounded. Further, the very agreement

12  he references belies his conclusory allegation that his stock options vested at termination.

13  In Paragraph 35, Boarder expressly acknowledges that Shira "awarded" him stock options

14  and then acknowledges the schedule by which those options would vest, but does not attach that

15  "award" or agreement to his complaint. This is not surprising, since a review of the Notice of

16  Grant of Stock Options and Option Agreement ("Stock Option Agreement") confirms that

17  Boarder did not have any right to exercise the stock option. *See* Graifman Decl. ¶ 5, Ex. A.[9] The

18  Stock Option Agreement provides vesting on a monthly basis beginning September 23, 2003. *See*

19  Graifman Decl. ¶ 5, Ex. A at p. 1. Because Boarder was not employed by Shira on September 23,

20  2003 (First Amended Complaint ¶ 18), his option never began to vest. Moreover, the Stock

21  Option Agreement does not provide for accelerated vesting simply because Shira terminated

22  Boarder. *See* Graifman Decl. ¶ 5, Ex. A ¶ 4. Despite the express contractual language, Boarder

23  alleges that his stock option automatically and fortuitously vested upon his termination, citing

24  only the "operation of law." This legal conclusion is insufficient to support Boarder's claim – to

25  survive dismissal, Boarder must cite the legal or contractual provision providing for accelerated

26  vesting and facts supporting such vesting. *Western Mining*, 643 F.2d at 624. Because Boarder

---

9   As discussed in the Request for Judicial Notice, filed herewith, the Court may judicially notice
    and consider the contents of this document in ruling on the motion to dismiss. *See e.g.*,
    *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (court may consider document referenced
    in the complaint on motion to dismiss) (overruled on other grounds).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  cannot base his claim for failure to allow him to exercise his stock options on his stock option

2  agreement and fails to cite any law supporting his claim to automatic vesting, the Court should

3  dismiss the Fifth Cause of Action for Breach of Contract re Award and Exercise of Stock Options

4  as to all defendants, including his employer, Shira.

5  **D.  Boarder's Claims Based On California Statutes Fail Because the Statutes Do Not Apply to Him.**

6

7  Boarder's statutory claims, which attempt to apply California law to parties and conduct

8  outside California, fail as a matter of law.  "We ordinarily presume the [California] Legislature

9  did not intend the statutes of this state to have force or operation beyond the boundaries of the

10 state.  Accordingly, we do not construe a statute as regulating occurrences outside the state unless

11 a contrary intention is clearly expressed or reasonably inferred from the language or purpose of

12 the statute."  *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999)

13 (refusing to apply Business and Professions Code Sections 17200, *et seq.*, to plaintiffs residing

14 outside California for conduct occurring outside California) (internal citations omitted).

15 Here, Boarder predicates his Seventh (Failure to Pay Compensation at Time of

16 Termination In Violation of Labor Code Secs. 201-203), Eighth (Unlawful Deductions From

17 Compensation In Violation of California Law and Public Policy), Tenth (Violation of Labor Code

18 Section 216), Eleventh (Negligence Per Se), Thirteenth (Violation of Business And Professions

19 Code Sections 17200 et seq.), Fifteenth (Violation of California Labor Code Sections 1400 et

20 seq.), Nineteenth (Statutory Misappropriation of Name or Identity Under California Civil Code

21 Section 3344), Twentieth (Violation of State Constitutional Right of Privacy, Calif. Constitution

22 Article I, Section 1),[10] Twenty-Second (Unfair Business Practice In Violation of Business And

23 Professions Code Secs. 17200 et seq.), and Twenty-Third (False Advertising In Violation of

24 Business And Professions Code Secs. 17500 et seq.) Causes of Action on California law.  The

25 conduct supporting these causes of action, as discussed *supra* I.B., occurred entirely outside of

26 California.

27

28 [10]  Alternatively, Boarder's Twentieth Cause of Action fails to state a claim because the First Amended Complaint lacks any allegations identifying Boarder's purported privacy interest.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Merely extending two examples of the cited California law to the facts of this case aptly demonstrates the absurdity of Boarder's claims. Boarder, an *Illinois* resident who worked in Illinois, apparently is not satisfied with the workers notification laws of Illinois, Massachusetts, or the United States. Accordingly, he attempts to invoke the provisions of the *California* Workers Adjustment and Retraining Notice ("Cal-WARN") Act for a termination that occurred in *Illinois or Massachusetts. See* First Amended Complaint ¶¶ 92-95. Federal, Illinois and Massachusetts privacy laws are equally unattractive to Boarder, since Boarder – who does not even allege he has ever visited, let alone lived in California – asserts privacy claims under the California Constitution against his Massachusetts employer. First Amended Complaint ¶¶ 117-22.

None of the cited California laws, including Cal-WARN and the California constitution, facially evince a legislative intent that they should apply to the extraterritorial conduct of nonresidents. Because California law does not regulate such conduct, the Court should dismiss Boarder's Sixth through Eighth, Tenth, Eleventh, Thirteenth, Fifteenth, Nineteenth, Twentieth, Twenty-Second, and Twenty-Third Causes of Action for failing to state a claim against any defendant.

## E.   Plaintiff's False Association and Endorsement Claims (Seventeenth Cause of Action) Fail Under the Lanham Act.

Boarder's Lanham Act claim also misses the mark. To properly assert a Lanham Act claim, Boarder must allege "(1) false or deceptive advertisements and representations to customers; (2) which advertisements and representations actually deceive a significant portion of the consuming public; and (3) injury caused by such conduct. [citation.] The injury must be 'competitive,' i.e., harm to plaintiff's ability to compete with the defendant. [citation.]" *Condit v. Star Editorial, Inc.*, 259 F. Supp. 2d 1046, 1052 (E.D. Cal. 2003). Boarder must allege an injury to a *commercial* interest – a present intent to commercially exploit his identity, commercial value of his identity, or current competitive activity involving his persona – for the injury to be "competitive." *Id.* Mere potential commercial interest is insufficient to support a Lanham Act claim. *Id.* at 1051. "Thus, [a plaintiff] must demonstrate that [he] was a 'celebrity' when [the defendant] used [his] persona, name and likeness; otherwise [his] identity does not constitute an

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

economic interest protectable under the Lanham Act." *Id.*(citing *Pessina v. Midway Mfg. Co.*, 948 F. Supp. 40, 43 (N.D. Ill. 1996)).

Boarder's claim fails because he cannot plead a commercial interest or competitive injury. Boarder asserts that the purported use of his name on Shira's website and in efforts to collect on outstanding debts amounts to a false designation of origin or advertisement and implies his affiliation and endorsement of Shira's product. First Amended Complaint ¶ 102-03. He further claims that he "has suffered, or is likely to suffer, damage to his reputation and in other respects. . . ." *Id.* at ¶ 104. Boarder does not allege that he competes with Shira now, that he commercially exploits his name now, or that he intends to exploit his name in the future. Further, he fails to allege any commercial interest in his name --- he is Brooke Boarder, not Brooke Shields.

In a similar case, the wife of Congressman Gary Condit claimed a tabloid article billed as "Her Own Story" conveyed her endorsement of or affiliation with the tabloid and the article in violation of the Lanham Act. *Condit*, 259 F. Supp. 2d at 1052. The court rejected Ms. Condit's claim, recognizing that Ms. Condit was a private figure without a commercial interest in her name and that "To hold that [Plaintiff's] interests [as presently described] are also embraced by the Lanham Act would be to expand the scope of that Act beyond anything its drafters intended." *See Condit*, 259 F. Supp. 2d at 1052 (quotation and citation omitted).

Because Boarder fails to plead the required elements for a Lanham Act claim, the Court should dismiss the Seventeenth Cause of Action for Violations of the Lanham Act as to all defendants.

### F.     Boarder's Twenty-First Cause of Action (Intentional Infliction of Emotional Distress) Fails To State a Claim.

To establish a cause of action for intentional infliction of emotional distress,[11] Boarder must plead facts demonstrating that Defendants engaged in extreme and outrageous conduct, did so with the intent to cause Boarder emotional distress or with reckless disregard, and that the

---

[11]  While Defendants believe that Illinois law should govern this action, as discussed *supra*, California and Illinois law do not conflict on the standards for a claim for intentional infliction of emotional distress. Defendants, therefore, refer to both states' laws, where appropriate, to show Boarder has failed to state a claim.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    conduct actually caused Boarder severe emotional distress. *See Christensen v. Superior Court*, 54

2    Cal. 3d 868, 903 (1991); *Thomas v. Fuerst*, No. 1-03-0795, 2004 WL 74292, *4 (January 16,

3    2004). Boarder fails in two separate respects.

4          1.    *As a Matter of Law, Failure To Remove Boarder's Name from Shira's*

5             *Website Is Not Outrageous Conduct.*

6        To be outrageous, the conduct must be so extreme "as to exceed all bounds of that usually

7    tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209

8    (1982); *Thomas*, 2004 WL 74292, *4. "[T]he rule which seems to have emerged is that there is

9    liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is

10    especially calculated to cause, and does cause, mental distress of a very serious kind. The

11    requirements of the rule are rigorous, and difficult to satisfy." *Yurick v. Superior Court*, 209 Cal.

12    App. 3d 1116, 1128-1129 (1989) (disapproved on other grounds); *see also Cochran v. Cochran*,

13    65 Cal. App. 4th 488, 496 (1998) (conduct must be "so outrageous in character, and so extreme in

14    degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

15    utterly intolerable in a civilized community"). Thus, "outrageous conduct does not include

16    trivialities such as indignities, annoyances, hurt feelings, or bad manners that a reasonable person

17    is expected to endure." CACI No. 1602 (Intentional Infliction of Emotional Distress –

18    "Outrageous Conduct" Defined) (2003); *Thomas*, 2004 WL 74292, *4.[12]

19        Boarder's Twentieth Cause of Action fails as a matter of law because the conduct alleged

20    in the First Amended Complaint falls short of the "extreme and outrageous" threshold for

21    pleading the claim. Boarder alleges that, after his termination, Shira (1) failed to remove his

22    name from the Company website thereby implying Boarder continued to endorse its product, and

23    (2) used his name in connection with its efforts to collect on outstanding accounts. First

---

[12]   *See, e.g., Cochran*, 65 Cal. App. 4th at 493-98 (sustaining demurrer because alleged conduct (including repeatedly leaving threatening messages on son's answering machine with a somber, deathly tone and withholding financial support upon which plaintiff and son were dependent) was insufficient to establish outrageous conduct); *Yurick*, 209 Cal. App. 3d at 1128-29 (supervisor's repeated statements to plaintiff that she was senile and a liar because she was over forty years old, even in front of co-workers and a company vendor, were not outrageous); *Ankeny v. Lockheed Missiles & Space Co.*, 88 Cal. App. 3d 531, 535-36 (1979) (sustaining demurrer because alleged conduct involving insults, wrongfully denying plaintiff promotion, assigning him work below his labor grade, terminating him and other "acts of harassment" was not outrageous).

Amended Complaint ¶¶ 100-101,124. While Boarder may describe Shira's conduct as "dismissive" or "arrogant" (First Amended Complaint ¶ 124), the alleged conduct certainly does not "exceed all bounds of that usually tolerated in a civilized society."

>    2.    *Boarder Fails To Plead That Defendants Targeted Him with Their Conduct.*

Not only must the conduct be intentional and outrageous, Boarder must also plead that Defendants directed the conduct at him or acted in an outrageous manner while aware of his presence. *Christensen*, 54 Cal. 3d at 903.

> Where a plaintiff rests this claim on the defendant's purported "reckless disregard" of the plaintiff's likely injury, … the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory.

*Christensen*, 54 Cal. 3d at 905-906 (funeral home not liable to friends and relatives of deceased for mishandling of deceased's remains). In the instant case, Boarder makes no allegation that the failure to remove his name from the website or even the continued use of his name to recover outstanding accounts "was directed primarily at [him], was calculated to cause [him] severe emotional distress, or was done with knowledge of [his] presence and a substantial certainty that [he] would suffer severe emotional injury." First Amended Complaint ¶¶ 123-27. Boarder has, therefore, failed to adequately plead the "intentional" element of his emotional distress claim.

Because this claim fails for lack of factual allegations demonstrating outrageous conduct or a culpable state of mind, the Court should dismiss Boarder's Twenty-First Cause of Action for Intentional Infliction of Emotional Distress as to all Defendants. In the alternative, even assuming, *arguendo*, that Boarder states a claim for intentional infliction of emotional distress against Shira, he fails to state how any other defendant may have been involved with the conduct supporting the claim. Thus, the Court, at a minimum, should dismiss Boarder's Twenty-First Cause of Action as to Vyyo and the individual defendants.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

V.   **THE COURT SHOULD STRIKE REFERENCES TO CALIFORNIA STATUTORY LAW FROM THE FIRST AMENDED COMPLAINT AS IMMATERIAL.**

A party may move the Court, pursuant to Federal Rule of Civil Procedure Rule 12(f), to strike "any redundant, immaterial, impertinent or scandalous matter" from a pleading. When "the matter to be stricken could have no possible bearing on the subject matter of the litigation," a motion to strike should be granted. *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). Thus, "a motion to strike may be used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 (C.D. Cal. 1996) (citing *Tapley v. Lockwood Green Engineers, Inc.*, 502 F.2d 559, 560 (8th Cir. 1974) (*per curiam*)).

In the instant case, Boarder's requests for relief pursuant to California law are immaterial. As discussed, *supra* Part IV.D., California statutes do not govern the out-of-state conduct of out-of-state parties such as Shira and Boarder. Despite this limitation, Boarder seeks interest, attorneys' fees and costs, penalties, and other damages in connection with California statutes. *See* First Amended Complaint at 13:2-4; 13:4-7; 13:23-24; 13:25-28; 16:3-4; 16:5-7; 18:13-14; 18:15-16; 19:2-4; 19:5-6; & 31:14-15 and Prayers for Relief ¶¶ 2, 5-6 & 9-11. Boarder cannot seek California remedies for the out-of-state conduct of nonresidents; thus, the Court should strike these requests from the First Amended Complaint as immaterial. The attached copy of excerpts from the First Amended Complaint (Exhibit A hereto) reflects the provisions that should be stricken.

### CONCLUSION

For the foregoing reasons, Defendants request relief as follows:

(1)   The Court dismiss this action for improper venue; or

(2)   In the alternative, the Court transfer this action to the Northern District of Illinois, where proper venue exists; or

(3)   In the alternative, the Court transfer this action to the Northern District of Illinois for the convenience of the parties and witnesses and to promote more efficient litigation; and

(4)   The Court dismiss the claims as to Vyyo and the individual defendants;

1     (5)     The Court dismiss the insufficient claims as to Shira; and

2     (6)     The Court strike the improper requests for relief.

3   DATED:  March 1, 2004                    Respectfully submitted,

4                                            FENWICK & WEST LLP

5

6                                            By:  _____/s/_____

7                                                 Shawna M. Swanson

8                                            Attorneys for Defendants
                                             VYYO, INC.; SHIRA, INC.; DAVIDI GILO;
9                                            ARIK LEVI; MICHAEL CORWIN; ILLAN
                                             JUDKIEWICZ; AND ROBERT GRAIFMAN

10

11

12

13                                                   23523/00401/LIT/1185268.3

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO